IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-00390-DDD

UNITED STATES OF AMERICA,

          Plaintiff,

          vs.

AARON DEEMER THOMAS,

          Defendant.

-------------------------------------------------------------------

REPORTER'S TRANSCRIPT
SENTENCING HEARING

-------------------------------------------------------------------

          Proceedings before the HONORABLE DANIEL D. DOMENICO,
Judge, United States District Court for the District of
Colorado, commencing at 3:32 p.m. on the 21st day of
February, 2023, in Courtroom A1002, Alfred A. Arraj United
States Courthouse, Denver, Colorado.

APPEARANCES

For the Plaintiff:
LAURA CRAMER-BABYCZ, Assistant U.S. Attorney, UNITED STATES
ATTORNEY'S OFFICE, 1801 California Street, Suite 1600, Denver,
CO 80202

For the Defendant:
LAURA A. MENNINGER, HADDON, MORGAN & FOREMAN, P.C., 150 East
10th Avenue, Denver, CO 80203

          JULIE H. THOMAS, RMR, CRR, Official Court Reporter,
          901 19th Street, Room A256, Denver, CO 80294
                    jht.reporter@gmail.com

          Proceedings reported by mechanical stenography;
          transcription produced via computer.

(Proceedings commenced 3:32 p.m., February 21, 2023.)

THE COURT:  Good afternoon.  Please take your seats.

We are here for sentencing in Case No. 21-cr-390, United States versus Aaron Deemer Thomas.

Counsel, why don't you enter your appearances, please.

For the Government?

MS. CRAMER-BABYCZ:  Good afternoon, Your Honor.  Laura Cramer-Babycz for the United States.

THE COURT:  Good afternoon.

For the defendant?

MS. MENNINGER:  Good afternoon, Your Honor.  Laura Menninger on behalf of Mr. Thomas, who is present to my right.  Also in the courtroom are Mr. Thomas's sister, Tamara Thomas, and also Ezra Aldern, who is the author of the mitigation report.

THE COURT:  Thank you very much.

And from the probation office, Officer Meador.

PROBATION OFFICER:  Good afternoon, Your Honor.  Paige Meador.

THE COURT:  Thank you.  Good afternoon.

The defendant previously pleaded guilty to two counts of bank robbery in violation of 18 U.S.C. Section 2113(a).

In preparation for today's sentencing, I received a

number of documents, including:  the presentence investigation report and the addendum to that report, which are documents 86 and 87; the defendant's objection to the presentence investigation report and the Government's response, which are documents 77 and 82; the Government's motion for a one-level decrease in the offense level for acceptance of responsibility, document 83; the Government's motion to dismiss Counts 2 and 3 of the indictment, document 84; the defendant's motion for a downward variance and for a departure, which is document 85; and the Government's response to that, which is document 88.

Is there anything else I should have reviewed in preparation for this hearing?  Oh, I should note I did receive a written copy of the note from the defendant a few minutes ago, and I read it in chambers.

Anything else from the Government's view?

MS. CRAMER-BABYCZ:  No, Your Honor.

THE COURT:  Miss Menninger, anything else I missed?

MS. MENNINGER:  Your Honor, it may be encompassed in what you said, but the Probation Department filed on our behalf the mitigation report at 87-1 as a part of the addendum.

THE COURT:  I did review that as part of the addendum.  Thank you.

Miss Menninger, have you and the defendant had enough

time to review and discuss the presentence investigation report?

MS. MENNINGER:  Yes, we have, Your Honor.

THE COURT:  Did you explain the contents of that report and this process to him?

MS. MENNINGER:  I did, Your Honor.

THE COURT:  Do you have any concerns about his ability to understand the contents of the report?

MS. MENNINGER:  No, Your Honor.

THE COURT:  All right.  Thank you.

Mr. Thomas, did you review the presentence investigation report?

THE DEFENDANT:  Yes.

THE COURT:  Did you discuss it and ask your attorney any questions you had about that report or about this process?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you believe you understand the contents of that report?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Very good.

Miss Menninger, why don't we talk about your objections.

You can take a seat.  Thank you.

As I reviewed the objections, they didn't -- most of them added context, I think --

MS. MENNINGER:  Right.

THE COURT:  -- and are certainly things I intend to take into account in arriving at a sentence, but I don't think any of them need to be -- my inclination, I guess, is to overrule them as objections but still take them into account. Is that all right?  Is there anything you think we need to address as an objection?

MS. MENNINGER:  No, Your Honor, I don't.  I think I tried to account for that after speaking to Probation and changing the title to Objections and Additions, but I do understand the process normally is just objections.  I don't think there's anything in there that was disputed by any of the parties.  It was just some additional information to give context to what was also contained in the presentence report.

THE COURT: Okay. Good. Thank you. I appreciate that.

Miss Cramer-Babycz, any objections or anything to add to that part of the discussion?

MS. CRAMER-BABYCZ:  No, Your Honor.  Thank you.

THE COURT:  All right.  So, as I indicated, I will overrule those as objections, but I will take into account the additional context that Miss Menninger provided in that document.

I might as well at this time, then, grant both the Government's motion for a one-level -- an additional one-level

decrease in the offense level for acceptance of responsibility and its motion to dismiss the other two counts of the indictment.

Therefore, before we get to any departures or variances, that leaves a total offense level in this case of 21 and a Criminal History Category of VI. That yields an advisory guideline range of 77 to 96 months of imprisonment and a fine of between 15,000 and $150,000 and 1 to 3 years of supervised release.

Miss Menninger, I have read the motion for departure, and I do understand the argument. At this time my inclination is to not grant a departure, but I do think I would take into account some of what you say in considering a variant sentence. I do want to give you a chance, though, to discuss, if you want, anything specifically about why you think that should be a departure rather than something considered -- I know you think it can and should be considered both, but if you want to talk about it specifically in the context of the departure, why don't you do that now.

MS. MENNINGER: Thank you, Your Honor. And would you prefer that I approach the podium or --

THE COURT: I think it's fine if you stay there. Thank you.

MS. MENNINGER: I will be very brief, Your Honor, because I understand that you have already read what I

submitted in my papers, but for purposes of the sentencing guideline departure possibility, the U.S. Sentencing Commission has endorsed a potential downward departure where a Criminal History Category substantially overrepresents the defendant's criminal history or the likelihood he will commit other offenses.

One of the tests that has been endorsed by the Seventh Circuit, as least as recently as December of last year, is that the length of the prior -- the sentences for the prior offenses is one factor to be considered in deciding whether an upward or a downward departure is merited. In that case, *U.S. v Jones*, which is 56 F4 455, the defendant had only a few criminal history points, but he had received sentences for 25 years, for example, warranted a three-point offense, which is the same as some of Mr. Thomas's misdemeanors have warranted here.

I thought it might be helpful for the Court if I just briefly read through the prior sentences as I think they reflect the lack of seriousness of those offenses that happened before. There's five days in jail, 23 days in jail, 12 months probation, two years probation, 120 days in jail, 18 months probation, 90 days jail, 60 days jail. Those were the sentences Mr. Thomas had received prior to the offense in this case. Since this offense he has been revoked on those probations for many reasons, mostly because he has not been

able to successfully complete probation, as we discussed, for other reasons. And since then he has received DOC state prison sentences of 18 months and 15 months, running concurrent to one another.

I cited the case of *Rivas* within this Circuit for some of the same propositions, that is, someone with two consecutive life sentences only got three criminal history points.

So when you take into account the fact that his prior sentences have all been pretty small, they have been for primarily drug-related offenses, personal use or imitation drugs that were being sold for a profit, I think putting him in the highest category of criminal history offense, VI, which typically is occupied by those with far more serious offenses than the types we are dealing with here that count for five days in jail sentences, it overrepresents his dangerousness. It certainly adequately represents the level of his addiction and the things he was doing as a consequence of those addictions.

So under the plea agreement the reason to consider it potentially for a departure versus a variance is that the Government has agreed to recommend to this Court the low end of whatever sentencing guideline calculation this Court makes. So, for example, if this Court were to find that a level III was more appropriate, then according to the plea agreement the

Government's recommendation would have to change accordingly down to the lower end of that.

Briefly responding to the Government's arguments on this topic, they reference several times that Mr. Thomas's criminal history was escalating. I'm not sure what "escalating" means in this context. Each one of those offenses were possession of controlled substance, possession of controlled substance, possession of an imitation controlled substance, possession of a controlled substance, a motor vehicle theft that he was living out of his car, and then possession of controlled substance. So I don't see a trend here towards anything more than addiction except for this case. And I certainly do understand and will argue at the appropriate time when we're talking about the 3553(a) factors, but I don't think, for the prior cases that give rise to the criminal history, we see some great level of escalation.

The other argument the Government made is that the sheer number of cases, the 11 prior cases, but yet that's exactly the point for a departure under this 4A1.3.

And the last thing I just want to briefly mention, which could be accounted for either as a departure or a variance, is that he failed to take advantage of the treatment programs that were offered to him. I would just refer the Court back to the mitigation report prepared by Mr. Aldern. He did go through all of the prior probation notes that

occurred in those prior cases, and they reflect several years of Mr. Thomas being homeless, you know, being asked to do in-home detention when he didn't have a home, asked to report in when he didn't really have a place to report to. Through some weird quirks, he never was give an presentence report in his prior cases. He certainly was not offered the opportunity of drug court because he hadn't had a prior attempt at substance abuse treatment. They just seem like random events that conspired, along with COVID, to make it very difficult for someone with his addiction, co-occurring mental health disorder, and his medical condition to actually have an adequate treatment program that accounted for the seriousness of his addiction.

I think it's important for the Court to acknowledge the overstated criminal history, in my opinion, relative to others who I have seen in this court and other courtrooms that have a level VI category offense most of whom have been to prison for many, many years. He's never been to prison before. Thank you, Your Honor.

THE COURT: All right. I do appreciate that. Thank you very much.

Miss Cramer-Babycz, why don't you respond, if you'd like.

MS. CRAMER-BABYCZ: Of course, Your Honor. I also will keep it fairly brief and rely largely on the Government's

response to the defendant's motion, but, you know, obviously length of sentence can be one proxy for determining the seriousness of somebody's criminal history, but when we see somebody who over the course of four years repeatedly goes into court, sustains 11 criminal convictions, and is completely undeterred in his criminal behavior, I do think that the Criminal History Category that he finds himself in now is appropriate with that history.

I do also maintain that there is an escalation here. He starts -- Mr. Thomas starts with theft, then trespass, fairly low level, false reporting, misdemeanor possession of a controlled substance, and then we see an escalation to possession with intent to distribute, possession of imitation drugs, which can be very dangerous if you are -- depending on what you are selling and pawning off as true drugs to somebody. He admitted that he was selling fake drugs at the time. Motor vehicle theft I would argue was also an escalation. And then we end here with bank robbery. He commits three bank robberies, one attempted bank robbery. He goes in and really traumatizes these tellers. These are not just possession of drugs or motor vehicle theft when someone might not be in their car. This is a victim crime, and I do think that shows a certain amount of escalation.

So it's the Government's position that the Criminal History Category here is certainly appropriate given those 11

convictions, given the fact that he was not deterred, could not comply with probation, and didn't take any real opportunities that he was given with treatment or court-ordered supervision.

THE COURT: Okay. Thank you very much.

So my position on this, Miss Menninger, I agree with a lot of what you said, and I'm inclined to grant a variant sentence, not as much as you asked for, but I do think a lot of the reasons you've already argued about, in addition to others that I'll let you get to here in a bit, do warrant at least something of a variant sentence. And I don't think it's crazy to also argue that this is a case where it's at least worth considering whether this particular departure should apply.

On the other hand -- the sort of short nature is one reason that you might say that's why the criminal history is overstated. On the other hand, it could be mitigating that someone who just has that many criminal history points in such a short time is -- warrants more than someone who has a bunch way off in the past, which is an argument we see fairly frequently.

I do think I agree with the Government that there's at least been some pattern of escalation. Where things have gone from drug offenses, relatively minor drug offenses, to motor vehicle theft and then to this does show that it wasn't

just continuing along the same path.

And so while I agree that this is probably not the most severe category VI, Criminal History Category VI, that I've seen or I'm going to see, I don't think I can justify saying that it substantially overstates what's been going on. But, as I said, I do think that a lot of the things Miss Menninger mentioned do play into the variance request that she's also made.

And so why don't I go ahead and just deny the motion for a departure, but let's discuss the variant sentence given that. I'll begin again with Miss Menninger, then Miss Cramer-Babycz, and then I know I've gotten a written statement, but I will give Mr. Thomas a chance to speak if he wants to.

Miss Menninger, go ahead.

MS. MENNINGER: Thank you, Your Honor. And Mr. Thomas had asked me to give that letter to the Court in lieu of his speaking. Of course, if he chooses to speak, he can, but I just wanted to give that to the Court in advance.

Your Honor, we have tried to weigh the 3553(a) factors in making our request to the Court for Mr. Thomas, and I would -- I will try not to repeat everything that's in our papers. I know the Court has carefully read through those and understands them for what they are, but one of the things that the Court must do, obviously, is take into account this

particular defendant and the situation that he presents and the nature and characteristics of the offense that is before the Court for sentencing.

Mr. Aldern's report I thought did a nice, thorough job of speaking to the family members, including his sister, who is present here today, his father, the mother of his children, who wanted to be here today but had to pick them up from school so sends her apologies to the Court.  Tam and Aaron had, by all measures, a very, very difficult childhood. That is true of many people who find themselves in circumstances like this, but I think the level of abuse at such a young age is stark.

Mr. Thomas clearly has both co-occurring mental health diagnoses that have persisted from his childhood as well as, obviously, a medical condition that needs treatment. And certainly and by no means the least of which is drug abuse that he has been suffering from addiction over the last six years.

Talking to Tam, reading Mr. Aldern's report, he really spiraled out of control starting in about 2017, which is clear from the criminal history.  I asked Mr. Thomas about these two new thefts that Probation presented to us.  He told me that he was stealing food from King Soopers and Wal-Mart. He was homeless at the time.  He stopped living with his children's mother, and he started using drugs, and it

escalated quickly and badly, and it resulted in the transfer of disease to him by needle.

He very much wants, and I think it's completely appropriate under the sentencing factors, to receive treatment through the RDAP program. And also, if possible, there are facilities that treat specifically co-occurring disorders, which are mental health and substance abuse which, of course, have different treatment needs perhaps than those who don't have a mental health disorder at the same time. And that's because, as you can see, a lot of what he was using drugs for was to self-medicate both to treat his own depression and anxiety as well as some of his physical problems that he has.

So, obviously, this is a serious case. We are in a federal courtroom. He's agreed that he committed prison-eligible offenses, although the statute permits probation. Walking into a bank and asking someone to give you money could be traumatizing. I want to push back just a little bit which is that I don't believe any of the tellers in this case reported that they had been traumatized, and that's one of the reasons that I wanted to highlight the note itself was not as threatening certainly as others that have come for sentencing in this District. And there was no weapon. There was no reference to a weapon. There was no pretending like we had a weapon. But that does not diminish the fact that it's a serious offense and it can be committed by means of

intimidation.  Obviously, walking into a bank and asking someone to give you money, put it in a bag, and so forth, no matter if you say "thank you" at the end, still is nothing anyone would wish had happened.  And so Mr. Thomas recognizes the need to take into account the seriousness of what he's done and to be sentenced accordingly both for deterrence purposes and also just for punishment.

However, one of the other sentencing factors for the Court is to sentence similarly situated defendants with similar criminal histories in a similar fashion.  And that really is the reason why we are asking for a 24-month sentence, because Mr. Thomas's codefendant, Ms. Anderson, was truly his partner in crime here.  They devised the plan together.  They executed the plan together.  Miss Anderson went in ahead of time to scout them out.  She drove the car away.  And they were both equally culpable.  She similarly, as I think I mentioned in my paperwork, has eight prior felonies, and she had received prior sentences of 16 years in prison, whereas Mr. Thomas has not gone to prison prior to this offense.

So in the -- you know, he's here before the Court on his third felony conviction as a 31-year-old, not a 51-year-old, going to prison really for the first time.  In this case, the Government asked for 37 months for Ms. Anderson and more than twice that for Mr. Thomas.  While there is a

difference in the person who walks into the bank and hands --
actually does the handing of the note to the teller, I'm not
sure it makes -- it would be warranted to ask for more than
double the sentence for the person who did that versus the
person who was intricately involved in the planning and
execution of the robberies.

The Government pointed to a case, *U.S. v Walker*,
which is a Tenth Circuit case from 2017 in which a gentleman
had robbed two banks that he pled guilty to.  He had committed
more than a dozen bank robberies as a part of the scheme.  He
was an armed career offender, and his guideline calculation
was 151 to 181 months in prison.  The judge in that case
recognized the substance abuse issues that defendant had and
gave him a 33-day credit-for-time-served sentence, which the
Tenth Circuit reversed because 33 days did not adequately
account for the seriousness of the offense or the need for
deterrence.  Obviously, we are not asking for 33 days, Your
Honor.  I, um, can see why the Tenth Circuit did what it did,
I guess is the only way I would put it.

On the other hand, I do want to just think for a
minute about the sentence that Mr. Thomas has served to date.
He was transferred to federal custody almost a year ago.  It
was on -- as of this Saturday, it would be a year.  Because of
that he was taken out of DRDC, which is the state designation
facility where they have programming, they have mental health

treatment, they have education programs, they have time outside, they have substance abuse treatment, they have libraries, they have a lot of things, and he was housed in the Clear Creek County jail for the last 362 days.  He was effectively denied a lot of that programming during that year. He was able to apply for and get as much treatment as they offer at the Clear Creek County jail, and he was able to take the one class -- two classes for which we submitted a transcript, but he was not able to get one-on-one treatment, as he would have been able to do in other facilities.

He has not been earning presentence confinement credit in this case even though he's been held in that Clear Creek County jail on this case.  And, also, because he was in custody on the federal warrant in Clear Creek County, he was not able to attend or participate in any parole hearings.  So he's been eligible for parole on those cases since December. I have been in touch with the DRDC case manager.  They thought he would be eligible for parole in January, then they thought February.  Last I heard from them they now think it might be April.  Had he been in state custody during this time, he would already have been paroled, I believe, to federal custody, and he would have been earning presentence confinement credit.  So one way to account for that year essentially lost is by including that year in a variance calculation.

Finally, Your Honor, it's up to this Court to determine whether or not to sentence him concurrently on this case for his prior sentenced cases. So that would be the three cases he's serving a sentence on in Denver and Adams County. Those are the ones for which he received 15 months and 18 months and two years DOC for his prior drug cases. I would ask this Court to consider imposing this sentence concurrent under 18 U.S.C. 3584(a) to permit this sentence to run concurrent to those previously imposed state court sentences, which is an option this Court has, to take into account the fact that he was serving his time in less-than-ideal circumstances while waiting for trial in this case.

And, lastly, Your Honor, having reviewed the RDAP facilities that Mr. Thomas would be eligible for, we would ask that the Court place on the minimis a recommendation that he be permitted to serve his time in FCI Englewood, which does have an RDAP facility and also is close to Mr. Thomas's children and other family members who would be able to visit him in person there versus places that were further afield.

THE COURT: All right. Thank you very much. I appreciate that.

Miss Cramer-Babycz.

MS. CRAMER-BABYCZ: Thank you, Your Honor. The Government is asking for a low-end-of-the-guideline sentence

for Mr. Thomas, which here is 77 months, as the Court has already found.

I stood before this Court and I asked for a low-end-of-the-guideline sentence for Miss Anderson as well. Her guidelines were wildly different. And really the biggest part of that is the difference in criminal history. I understand that Miss Anderson did have a number of prior felonies, but many of them were dated, and, you know, I think there is a difference between that dated criminal history to a certain extent and, again, what I view as the escalating nature of Mr. Thomas's conduct. It's also the Government's view that the individual who walks into a bank and presents the note and takes the money directly from a person staring them in the eyes is fundamentally different from the getaway driver or the person who goes in and scouts. Unfortunately, I don't have information from the Court as to who was the real mastermind between the two of them, but I do think that just that conduct alone is very different in terms of culpability.

And so for those reasons the Government is asking for a low-end-of-the-guideline sentence. I think a low-end-of-the-guideline sentence can account for the fact that, again, Mr. Thomas, I acknowledge, has had a difficult upbringing and has struggled with mental health diagnoses and substance abuse. I think that can be accounted for within the guidelines range by imposing a low-end-of-the-guideline

sentence, but I would ask that the Court impose 77 months imprisonment followed by 3 years of supervised release.

THE COURT:  Can I just make sure I understand your position on the concurrent sentences issue?  So I think we are all in agreement that the sentences for these two should run concurrent, these two charges, but I think Miss Menninger was also asking that this sentence be deemed concurrent to his -- the state sentences.  Do you have a position on those issues?

MS. CRAMER-BABYCZ:  I have no objection to the sentence being imposed concurrently to the state sentences that he's been ordered to serve.

THE COURT: Okay. All right. Well, thank you very much.

So, Mr. Thomas, I did review the note that you wrote, and I read it, and I appreciate it, and you don't have to speak up if you don't want to, but you do have that right.  If you wish to say anything before I make a decision, now is your chance.

THE DEFENDANT:  Only that I accept responsibility for what I did, and I'm sorry, and I plan to get the help I need. That's all.

THE COURT:  All right.  Well, thank you very much. And I do appreciate the note that you wrote, and I did review that.  I read the report that was provided.

And so having considered all of those things, as well

as the statements here today and the rest of the record, my judgment is that a variant sentence is appropriate, although not as extreme a variant sentence as the defendant has moved for.

My judgment is that the defendant be committed to the custody of the Bureau of Prisons to be imprisoned for a term of 48 months on each of these counts, to run concurrent to each other as well as to the state cases that were mentioned.

Upon release from imprisonment he will be placed on a term of supervised release for 3 years.

Within 72 hours of release from custody he must report in person to the probation office in the district in which he is released.

I will include the recommendation that he be placed at Englewood and be placed in an RDAP program if possible, as long as I want to make sure, Mr. Thomas, you understand those are just recommendations.  I can't order the Bureau of Prisons to place you anywhere or to put you in any particular program, but I can make that recommendation.  So as long as you understand it's just a recommendation.

THE DEFENDANT:  Sure.

THE COURT:  All right.  So I will include that in the judgment.

I do think that all of the conditions of supervised release discussed in the presentence investigation report are

appropriate and important in this case. That means he must comply with the mandatory conditions of supervision set by statute, the standard conditions of supervised release adopted by this Court in General Order 2020-20.

I also find that the recommended special conditions of release are appropriate under the statutory sentencing factors and do not constitute a greater deprivation of liberty than is necessary to accomplish those statutory sentencing goals. Those special conditions include that, Mr. Thomas, you must participate in a program of testing and treatment for substance abuse as supervised and approved by the probation officer. You must participate in a mental health treatment program, again as supervised and approved by the probation officer. And in conjunction with that treatment you must remain medication compliant, potentially even including testing, blood testing if necessary. Given the history of mental health and drug abuse, substance abuse issues going on here, those all seem like important aspects of making sure that this is the last time Mr. Thomas appears in this court or any other court.

He also is required to pay restitution in the amounts described in the presentence investigation report, jointly and severally liable with his codefendant as explained there. He is, therefore, also required to comply with the financial restrictions and reporting requirements that are outlined in

the presentence investigation report.  These are necessary to ensure that that restitution is paid.  He also will be subject to the search condition.

Mr. Thomas, you must submit, while you are on supervised release, to a search of your property, your person, your electronic devices to searches conducted by the probation office if they have reasonable suspicion that the search will show evidence of a violation of your supervised release.

I do not find that the defendant has the ability to pay a fine, so the fine is waived in this case.

He is ordered to pay a special assessment of $200, $100 per count.  That is due and payable immediately.

As I explained, I do think there are a number of mitigating factors here, which is why I have arrived at this variant sentence.  The fact that the defendant went from having addiction issues in just a few years to being here facing a relatively long prison sentence is, as I mentioned, somewhat aggravating but also somewhat mitigating.  It does make me think that a lengthy sentence is necessary because the shorter sentences clearly have not worked to break this cycle and in some ways may have made it worse.  This sentence is quite a bit longer than any sentence that the defendant previously has served.  My hope, my expectation, is four years will be enough to make the things that you told me in this letter actually stick and to get you some of that treatment

that I think you now recognize you need. And I think that this sentence is sufficient to do that, but a 77-month sentence would be greater than necessary. I do think that the time-served question is another justification for a slightly lower sentence than the guidelines would recommend.

Overall, while I agree that I do have an obligation to try to avoid unnecessary sentencing disparities, and this is essentially double what his codefendant got, I do think that that is an appropriate disparity in this case given the differences in criminal history. I do agree with the Government that the one who actually takes the step of walking into a bank and demanding money is significantly -- taking a significant step that someone else who just writes a note is not. And while I agree, Miss Menninger, there's not any testimony that I saw of anyone who was particularly terrified in this case, I do think every bank robbery at least has sort of a sense of a threat behind it of some sort, whether it's made explicit or not, and I do think that that comes into play in this case.

So I think that, taking all the sentencing factors into consideration, that this sentence reflects the seriousness of these offenses, will promote respect for the law and provide just punishment, and my expectation is it will deter him and others from this sort of conduct in the future. I think the supervised release will be very important in this

case.

I appreciate Mr. Thomas's stated intention and efforts he's made so far to try to take advantage of the programming that will be available, and I expect that that will be important both while serving the sentence in custody and afterwards.  This will be a chance, Mr. Thomas, to turn your life around.  You are going to be very young still.  You will still have kids who depend on you.  I appreciate that your sister is here.  This will be a chance to prove to all those people that you can be depended on.  There's no reason you can't be, for the rest of your life, a productive member of society, but you also, I hope, see how easy it is to fall into this downward spiral.  So it's going to be a battle the rest of your life.  My hope is that these four years in custody and then the time afterwards on supervised release will be sufficient to help you both get the tools and remind you of where you could go if you make those wrong decisions again.

So all things considered, that is my justification for this sentence.

Mr. Thomas, I want to advise you that although you have waived your appellate rights to the extent outlined in your plea agreement, if you have not waived your right to appeal, a notice of appeal must be filed with the Clerk of Court within 14 days after entry of judgment or the right to

appeal will be lost. If you can't afford an attorney for an appeal, the Court will appoint one to represent you. And if you request, the Clerk of Court must immediately prepare and file a notice of appeal on your behalf.

Is there anything else on behalf of the Government?

MS. CRAMER-BABYCZ: No. Thank you, Your Honor.

THE COURT: All right. Thank you.

On behalf of the defendant?

MS. MENNINGER: No. Thank you, Your Honor.

THE COURT: Anything from Probation?

PROBATION OFFICER: Your Honor, I just want to clarify for the record that the sentence imposed today is concurrent with these three cases: I have 2019 CR 2636, 2019 CR 9216, and then 21 CR 3644. Is that --

THE COURT: Miss Menninger, is that right?

MS. MENNINGER: That's right. Those are the numbers I have. The last one is Adams County. I think you have to put the county and then the case number.

PROBATION OFFICER: I will put the counties and the case numbers, but I only got three, so --

MS. MENNINGER: That's right. Those are the three. 19 CR 2636, 19 CR 9216, and 21 CR 3644.

THE COURT: Thank you.

MS. MENNINGER: Thank you.

THE COURT: I think we are all on the same page on

those then.  Thank you.

Good luck, Mr. Thomas.

Court will be in recess.

(Proceedings concluded 4:12 p.m.,

February 21, 2023.)

REPORTER'S CERTIFICATE

I, JULIE H. THOMAS, Official Court Reporter for the United States District Court for the District of Colorado, a Registered Merit Reporter and Certified Realtime Reporter, do hereby certify that I reported by machine shorthand the proceedings contained herein at the time and place aforementioned and that the foregoing pages constitute a full, true and correct transcript.

Dated this 7th day of July, 2023.

_____/s/ Julie H. Thomas_____
Official Court Reporter